## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANGEL HERNANDEZ, individually and on behalf of all others similarly situated,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC. d/b/a SPECTRUM | Case No. _____<br>FLSA Collective Action<br>FED. R. CIV. P. 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Like many other companies across the United States, Charter's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2.      That hack led to problems in timekeeping and payroll throughout Charter's organization.

3.      As a result, Charter's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

4.      Angel Hernandez is one such Charter worker.

5.      Charter could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6.      But it didn't. Instead, Charter used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7.      Charter pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8.      Charter made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9.      Charter's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10.     Charter's failure to pay wages, including proper overtime, for all hours worked to its workers in New York also violates in New York also violates the New York Labor Law (NYLL), Art. 6, §§ 190 *et seq.*, and Art. 19, §§ 650 *et seq.*, as well as supporting New York State Department of Labor Regulations.

11.     Hernandez brings this lawsuit to recover these unpaid overtime wages and other damages owed by Charter to her and Charter's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but Charter's decision to make its own non-exempt employees workers bear the economic burden for the hack.

12.     This action seeks to recover the unpaid wages and other damages owed by Charter to all these workers, along with the penalties, interest, and other remedies provided by federal and New York law.

## JURISDICTION & VENUE

13.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.     The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Charter is headquartered in this District.

PARTIES

16.     **Plaintiff Angel Hernandez** is a natural person.

17.     Hernandez was, at all relevant times, an employee of Charter.

18.     Hernandez has worked for Charter since February 2021.

19.     Hernandez worked for Charter in New York.

20.     Hernandez represents at least two groups of similarly situated Charter workers.

21.     Hernandez represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Charter (including its subsidiaries and alter egos), who worked in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

22.     Hernandez represents a class of similarly situated workers under New York law pursuant to Federal Rule of Civil Procedure 23. This "New York Class" is defined as:

> **All current or former non-exempt employees of Charter (including its subsidiaries and alter egos) who worked in New York at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

23.     Throughout this Complaint, the FLSA Collective members and the New York Class are referred to jointly as the "Similarly Situated Workers."

24.     **Defendant Charter Communications, Inc. d/b/a Spectrum ("Charter")** is a foreign corporation.

25.     Charter is headquartered in this District.

26.     Charter may be served by service upon its registered agent, **Corporation Service Company, Goodwin Square, 225 Asylum St., 20th Floor, Hartford, CT 06103**, or by any other method allowed by law.

27.     At all relevant times, Charter Communications, Inc. has been doing business under the assumed name, "Spectrum."

28.     Charter's subsidiaries and alter egos include, but are not limited to:

- Charter Communications, LLC
- Charter Communications Holding Company, LLC
- Charter Communications Holding, LLC
- Charter Communications (DE), Inc.
- Charter Communications of Ne Jersey, Inc.
- Charter Communications Enterrtainment I,LLC
- Charter Communications Entertainment I, LP

29.     At all relevant times, Charter exerted operational control over its subsidiaries and alter egos.

30.     At all relevant times, Charter substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

31.     At all relevant times, Charter had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

32.     Charter employed and/or jointly employed, with its subsidiaries and alter egos, Charter and the Similarly Situated Workers.

33.     Charter and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

34.     Charter and its subsidiaries and alter egos are joint employers for purposes of New York Law.

35.     Throughout this Complaint, Charter and its subsidiaries and alter egos are referred to jointly as "Charter."

## COVERAGE UNDER THE FLSA

36.     At all relevant times, Charter was an employer of Hernandez within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

37.     At all relevant times, Charter was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

38.     Charter was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

39.     During at least the last three years, Charter has had gross annual sales in excess of $500,000.

40.     Charter was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

41.     Charter employs many workers, including Hernandez, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

42.     The goods and materials handled, sold, or otherwise worked on by Hernandez, and other Charter employees and that have been moved in interstate commerce include, but are not limited to, cable and telecommunications equipment.

## FACTS

43.     Charter is a telecommnications company.

44.     Many of Charter's employees are non-exempt hourly and salaried workers.

45.     Since at least 2021, Charter has used timekeeping software and hardware operated and maintained by Kronos.

46.     On or about December 11, 2021, Kronos was hacked with ransomware.

47.     The Kronos hack interfered with the ability of its customers, including Charter, to use Kronos's software and hardware to track hours and pay employees.

48.     Since the onset of the Kronos hack, Charter has failed to keep accurate track of the hours that Hernandez and Similarly Situated Workers have worked.

49.     Instead, Charter has used various methods to estimate the number of hours Hernandez and Similarly Situated Workers work in each pay period.

50.     For example, Charter issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

51.     As a result of Charter's failure to accurately track the actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

52.     Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

53.     Hernandez is one of the thousands of employees affected by these pay and timekeeping practices.

54.     Instead of paying Hernandez for the hours she actually worked (including overtime hours), Charter simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Hernandez's actual hours worked and regular pay rates, in multiple workweeks.

55.    In some instances, Hernandez was paid portions of the overtime she worked, but the overtime rate she was paid was not at least 1.5 times her agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonuses.

56.    In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

57.    Charter knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

58.    Charter knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

59.    Charter could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

60.    Instead of accurately tracking hours and paying employees their overtime, Charter decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

61.    Even to the extent it did pay some overtime to affected employees, Charter failed to take into account shift differentials and non-discretionary bonuses, such that the overtime premium Charter did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

62.    It was feasible for Charter to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

63.     But it chose not to do that.

64.     In other words, Charter pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

65.     Hernandez is just one of the many Charter employees who had to shoulder the burden of this decision by Charter.

66.     Hernandez was a non-exempt hourly employee of Charter.

67.     Hernandez regularly worked over 40 hours per week for Charter.

68.     Hernandez's normal, pre-Kronos hack hours are reflected in Charter's records.

69.     Since the Kronos hack, Charter has not paid Hernandez for her actual hours worked each week.

70.     Since the hack took place, Charter has not been accurately recording the hours worked by Hernandez and its other workers.

71.     Even when Charter has issued payment to Hernandez for any overtime, the overtime is not calculated based on Hernandez's regular rates, as required by federal law.

72.     Charter was aware of the overtime requirements of the FLSA.

73.     Charter nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Hernandez.

74.     Charter's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

75.    The full overtime wages owed to Hernandez and the Similarly Situated Workers became "unpaid" when the work for Charter was done—that is, on Hernandez and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

76.    At the time Charter failed to pay Hernandez and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Charter became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under the law.

77.    In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

78.    Even if Charter made any untimely payment of unpaid wages due and owing to Hernandez or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

79.    The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

80.    Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Charter's acts and omissions resulting in the unpaid wages in the first place.

81.     Hernandez and the Similarly Situated Workers remain uncompensated for the wages and other damages owed by Charter under federal and New York law.

COLLECTIVE ACTION ALLEGATIONS

82.     Hernandez incorporates all other allegations.

83.     Numerous individuals were victimized by Charter's patterns, practices, and policies, which are in willful violation of the FLSA.

84.     Based on her experiences and tenure with Charter, Hernandez is aware that Charter's illegal practices were imposed on the FLSA Collective.

85.     The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

86.     These employees are victims of Charter's respective unlawful compensation practices and are similarly situated to Hernandez in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

87.     The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

88.     Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

89.     Charter's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

90.     The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

CLASS ACTION ALLEGATIONS

91.     Hernandez incorporates all other allegations.

92.     The illegal practices Charter imposed on Hernandez were likewise imposed on the New York Class members.

93.     Numerous other individuals who worked for Charter were were not properly compensated for all hours worked, as required by New York law.

94.     The New York Class is so numerous that joinder of all members of the class is impracticable.

95.     Charter imposed uniform practices and policies on Hernandez and the New York Class members regardless of any individualized factors.

96.     Based on her experience and tenure with Charter, as well as coverage of the Kronos hack, Hernandez is aware that Charter's illegal practices were imposed on the New York Class members.

97.     New York Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

98.     Charter's failure to pay wages and overtime compensation in accordance with New York law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the New York Class members.

99.     Hernandez's experiences are therefore typical of the experiences of the New York Class members.

100.    Hernandez has no interest contrary to, or in conflict with, the members of the New York Class. Like each member of the proposed class, Hernandez has an interest in obtaining the unpaid wages and other damages owed under the law.

101.    A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

102.    Absent this action, many New York Class members likely will not obtain redress of their injuries and Charter will reap the unjust benefits of violating New York law.

103.    Furthermore, even if some of the New York Class members could afford individual litigation against Charter, it would be unduly burdensome to the judicial system.

104.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

105.    The questions of law and fact common to each of the New York Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

       a.     Whether the New York Class members were paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

       b.     Whether Charter's failure to pay overtime at the rates required by law violated New York's wage and hour laws.

106.    Hernandez's claims are typical of the New York Class members. Hernandez and the New York Class members have all sustained damages arising out of Charter's illegal and uniform employment policies.

107.    Hernandez knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

108.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### FIRST CAUSE OF ACTION—OVERTIME VIOLATIONS OF THE FLSA AS TO HERNANDEZ AND THE FLSA COLLECTIVE

109.    Hernandez incorporates each other allegation.

110.    By failing to pay Hernandez and the FLSA Collective members overtime at 1.5 times their regular rates, Charter violated the FLSA. 29 U.S.C. § 207(a).

111.    Charter owes Hernandez and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

112.    Charter owes Hernandez and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

113.    Likewise, Charter owes Hernandez and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

114.    Charter knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

115.    Because Charter knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Charter owes these wages for at least the past three years.

116.    Charter's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

117.    Because Charter's decision not to pay overtime was not made in good faith, Charter also owes Hernandez and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

118.    Accordingly, Hernandez and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—NYLL MINIMUM WAGE AND OVERTIME VIOLATIONS AS TO HERNANDEZ AND THE NEW YORK CLASS

119.    Hernandez incorporate all other allegations.

120.    The conduct alleged in this Complaint violates the NYLL, §§ 650 *et seq.*

121.    At all relevant times, Charter was and is an "employer" within the meaning of the NYLL.

122.    At all relevant times, Charter employed Hernandez and the other New York Class members as "employees" within the meaning of the NYLL.

123.    At all relevant times, Hernandez and the New York Class have been covered by the NYLL.

124.    The minimum and overtime wage provisions of NYLL Article 19 and its supporting regulations apply to Charter, and they protect Hernandez and the New York Class members.

125.    Charter failed to pay Hernandez and the New York Class members wages for all hours worked. 12 N.Y.C.R.C. § 142-2.1.

126.    Within the applicable limitations period, Charter had a policy and practice of failing to pay minimum wages to the New York Class members for all hours worked.

127.    Charter failed to pay Hernandez and the New York Class members overtime for all hours worked over 40 in a workweek at a rate of no less than 1.5x their regular rate of pay. 12 N.Y.C.R.C. § 142-2.2.

128.   Within the applicable limitations period, Charter had a policy and practice of failing to pay proper overtime to the New York Class members for their hours worked in excess of 40 hours per week.

129.   As a result of Charter's failure to pay wages and proper overtime to Hernandez and the New York Class members for work performed in excess of 40 hours in a workweek, Charter violated the NYLL.

130.   Through their knowing or intentional failure to pay Hernandez and the New York Class members wages and proper overtime wages for hours worked in excess of 40 in a workweek, Charter willfully violated the NYLL, Article 19 §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations.

131.   Due to Charter's willful violations of the NYLL, Hernandez and the New York Class members are entitled to wages under the NYLL for hours worked, liquidated damages, attorneys' fees, costs, and all other legal and equitable relief provided under the NYLL.

132.   Due to Charter's willful violations of the NYLL, Hernandez and the New York Class members are entitled to overtime wages under the NYLL in an amount equal to 1.5x their regular rates of pay, liquidated damages, attorneys' fees, costs, and all other legal and equitable relief provided under the NYLL.

### THIRD CAUSE OF ACTION—NYLL WAGE NOTICE VIOLATIONS AS TO HERNANDEZ AND THE NEW YORK CLASS

133.   Hernandez incorporates all other allegations.

134.   Charter has willfully failed to furnish Hernandez and the New York Class members with wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, at the time of hiring, and

on or before February 1 of each subsequent year of the employee's employment, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

135.    Through their knowing or intentional failure to provide Hernandez and the members of the Rule 23 Class with the wage notices required by the NYLL, Charter has willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

136.    Due to Charter's willful violations of NYLL, Article 6, § 195(1), Hernandez and the New York Class members are entitled to statutory penalties per for each workday or workweek that Charter failed to provide Hernandez and the New York Class members with proper wage notices, reasonable attorneys' fees, costs, and declaratory and injunctive relief, pursuant to NYLL, Article 6, § 198(1-b).

### FOURTH CAUSE OF ACTION—NYLL WAGE STATEMENT VIOLATIONS AS TO HERNANDEZ AND THE NEW YORK CLASS

137.    Hernandez incorporates all other allegations.

138.    Charter has willfully failed to furnish Hernandez and the New York Class members with a statement with every payment of wages as required by NYLL, Article 6, § 195(3), listing: the dates of work covered by that payment of wages; name of employee;

name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

139.    Through its knowing or intentional failure to provide Hernandez and the New York Class members with the wage statements required by the NYLL, Charter has willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

140.    Due to Charter's willful violations of NYLL, Article 6, § 195(3), Hernandez and the New York Class members are entitled to statutory penalties, reasonable attorneys' fees, costs, and declaratory and injunctive relief, as provided for by NYLL, Article 6, § 198(1-d).

RELIEF SOUGHT

Hernandez prays for judgment against Charter as follows:

a.    For an order certifying a collective action for the FLSA claims;

b.    For an order certifying a class action for the New York law claims;

c.    For an order finding Charter liable for violations of federal wage laws with respect to Hernandez and all FLSA Collective members covered by this case;

d.    For an order finding Charter liable for violations of New York wage laws with respect to Hernandez and all New York Class members covered by this case;

e.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Hernandez and all FLSA Collective members covered by this case;

f.  For a judgment awarding all unpaid wages, liquidated damages, and penalties under New York wage laws to Hernandez and all New York Class members covered by this case;

g.  For an equitable accounting and restitution of wages due to Hernandez and all FLSA Collective and New York Class members members covered by this case;

h.  For an declaratory judgment that Charter's acts and omissions as to Hernandez and the New York Class members are unlawful under the NYLL, Art. 6, §§ 190 *et seq.*, and Art. 19, §§ 650 *et seq.*, and supporting New York State Department of Labor Regulations;

i.  For an injunction requiring Charter to pay all statutorily required wages to Hernandez and the New York Class and to cease the unlawful activity affecting Hernandez and the New York Class members, pursuant to the NYLL;

j.  For a judgment awarding attorneys' fees to Hernandez and all FLSA Collective and New York Class members covered by this case;

k.  For a judgment awarding costs of this action to Hernandez and all FLSA Collective and New York Class members covered by this case;

l.  For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Hernandez and all FLSA Collective and New York Class members covered by this case; and

m.  For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: _____
  **Richard E. Hayber (ct11629)**
Hayber, McKenna & Dinsmore, LLC
750 Main Street, Suite 904
Hartford, CT 06103
Telephone : (860) 522-8888
Facsimile : (860)
Email : rhayber@hayberlawfirm.com


**C. Ryan Morgan, Esq.***
Florida Bar No.: 0015527
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone:    (407) 420-1414
Facsimile:    (407) 867-4791
Email:        rmorgan@forthepeople.com


**Matthew S. Parmet***
TX Bar # 24069719
(*seeking admission pro hac vice*)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law


**Attorneys for Plaintiff and the Class**

**Pro hac vice** application forthcoming

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Angel Hernandez

**DEFENDANTS**

Charter Communications, Inc. d/b/a Spectrum

**(b)** County of Residence of First Listed Plaintiff   Queens, NY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product      Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument |      Liability    ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &      Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
|      & Enforcement of Judgment |      Slander      Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'      Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted |      Liability    ☐ 368 Asbestos Personal | |      New Drug Application | ☐ 470 Racketeer Influenced and |
|      Student Loans | ☐ 340 Marine      Injury Product | | ☐ 840 Trademark |      Corrupt Organizations |
|      (Excludes Veterans) | ☐ 345 Marine Product      Liability | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment |      Liability    **PERSONAL PROPERTY** | **LABOR** |      Act of 2016 |      (15 USC 1681 or 1692) |
|      of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | ☒ 710 Fair Labor Standards | | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending |      Act | **SOCIAL SECURITY** |      Protection Act |
| ☐ 190 Other Contract |      Product Liability    ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal      Property Damage |      Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise |      Injury    ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) |      Exchange |
| | ☐ 362 Personal Injury -      Product Liability | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| |      Medical Malpractice |      Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee |      Income Security Act | ☐ 870 Taxes (U.S. Plaintiff |      Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 510 Motions to Vacate | |      or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/      Sentence | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability |      Accommodations    ☐ 530 General | |      26 USC 7609 |      Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty | **IMMIGRATION** | |      Agency Decision |
| |      Employment    **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities -    ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | |      State Statutes |
| |      Other    ☐ 550 Civil Rights |      Actions | | |
| | ☐ 448 Education    ☐ 555 Prison Condition | | | |
| |    ☐ 560 Civil Detainee - | | | |
| |      Conditions of | | | |
| |      Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 USC s 201, et seq.

Brief description of cause:
recovery of unpaid wages and related damages

**VII. REQUESTED IN COMPLAINT:**

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

**VIII. RELATED CASE(S) IF ANY**

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
04/25/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____